UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYIA VOLKAVA, NASTASSIA PLASKAVITSKAYA, SVETLANA ZAYTSEVA, TAMARA HERNANDEZ, Individually and on behalf of all other persons similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>RHM RESTAURANT CORP. d/b/a ROLFS and ROBERT H. MAISANO, Jointly and Severally,<br><br>          Defendants. | ECF CASE<br><br>No.: _____<br><br><u>CLASS AND COLLECTIVE ACTION COMPLAINT</u><br><br>JURY TRIAL DEMANDED |

<u>NATURE OF THE ACTION</u>

1.     Plaintiffs Maryia Volkava, Nastassia Plaskavitskaya, Svetlana Zaytseva, and Tamara Hernandez worked as servers and bartenders for Defendant RHM Restaurant Corp., d/b/a Rolfs and Robert H. Maisano (collectively, "Defendants") at their German restaurant for various time periods from 2013 to March 2020.

2.     Plaintiffs allege, on behalf of themselves and on behalf other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay spread-of-hours pay, (iv) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, and (v) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

3.     Plaintiffs allege, on behalf of themselves and on behalf of other similarly situated current and former employees of Defendants and those who elect to opt into this

action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendants willfully violated the FLSA by failing to pay overtime premium pay.

4.    Plaintiff Hernandez asserts individual claims of gender discrimination, sexual harassment, hostile work environment and retaliation against Defendants under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' FLSA claim under 29 U.S.C. § 216(b).

6.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

7.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

8.    Defendants agreed to toll Plaintiffs' statute of limitations from March 8, 2023 to June 8, 2023.

9.    Plaintiffs timely filed their Complaint.

THE PARTIES

10.    Plaintiff Maryia Volkava was, at all relevant times, an adult individual residing in Kings, New York.

11.    Plaintiff Nastassia Plaskavitskaya was, at all relevant times, an adult individual residing in Montgomery, Pennsylvania.

12.     Plaintiff Svetlana Zaytseva was, at all relevant times, an adult individual residing in Kings, New York.

13.     Plaintiff Tamara Hernandez was, at all relevant times, an adult individual residing in Suffolk, New York.

14.     Upon information and belief, Defendant Rolfs is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

15.     Defendant Rolfs is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Defendant Rolfs is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, including food, glassware, computers and beverages.

16.     Defendant Robert H. Maisano, upon information and belief, owns, operates and controls Defendant Rolfs' day-to-day operations and management and jointly employed Plaintiffs and other similarly situated employees at all relevant times.

17.     Each Defendant, either directly or indirectly, has hired Plaintiffs and other employees, fired other employees, controlled Plaintiffs' work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

18.     At any given time, Defendants have and have had more than 11 employees.

## STATEMENT OF FACTS

19.     Defendants operate and manage a German restaurant at 281 Third Avenue, New York, New York.

Duties Performed[1]

20.     During all relevant times, Defendants employed Plaintiffs as servers and bartenders.

21.     As servers, Plaintiffs were responsible for taking customers' orders and bringing food and beverages to them. Defendants, in addition, required them to spend approximately 1 hour a day performing side work, such as setting tables and getting the floor ready for service.

22.     As bartenders, Plaintiffs were responsible for preparing drinks and beverages for the customers, taking their orders and doing side work, including cleaning the bar and the restaurant.

23.     Defendants' restaurant is generally open 7 days a week from 12:00 p.m. and until the last customers leave, which is normally between 10:00 p.m. and 2:00 a.m.

24.     Defendants' employees generally work from 11:00 a.m. to between 10:00 p.m. and 3:00 a.m.

25.     Defendants did not afford Plaintiffs and the other employees *any* uninterrupted breaks during their shifts, let alone a 30-minute uninterrupted lunch break.

---

[1] These subject lines are included only for organizational purposes.

<u>Volkava's Employment Dates and Hours Worked</u>[2]

26.     Plaintiff Volkava worked for Defendants from approximately 2014 to January 19, 2019.

27.     From 2014 to April 2017, Defendants employed Plaintiff Volkava as a seasonal server, working approximately from mid-November to mid-January each year.

28.     From 2014 to mid-January 2017, Plaintiff Volkava generally worked 4 to 5 days per week, from 11:00 a.m. to 12:00 p.m., working at least 13 hours per day and 52 to 65 hours per week.

29.     From mid-January 2017 to April 2017, Plaintiff Volkava worked as a server, working 2 to 3 days per week, starting at 11:00 a.m. to 12:00 p.m., working at least 13 hours per day and 26 to 39 hours per week.

30.     In April 2017, Defendant Maisano asked Plaintiff Volkava to switch from being a seasonal worker to working all year around as a bartender and server. She agreed.

31.     From 2017 to 2019, during the busy season each year, from mid-November to mid-January, Plaintiff Volkava generally worked 5 days a week as a server and 2 days as a bartender.

32.     During the busy season, for 2 days a week when she worked as a bartender, Plaintiff Volkava generally worked from 11:00 a.m. to 2:00 or 3:00 a.m., working an average of 15.5 hours per day, and during 5 days a week when she worked as a server, from 11:00 a.m. to 12:00 a.m., working 13 hours per day, totaling 96 hours worked per week.

---

[2] The date ranges are estimates based on Plaintiffs' memories.

33.     From 2017 to 2019, outside of the busy season, Plaintiff Volkava generally worked 4 to 5 days a week as a bartender, generally working from 11:30 a.m. to 10:00 p.m., working 10.5 hours per day and 42 to 52.5 hours per week.

Volkava's Unpaid Social Media Hours

34.     From the Summer 2017 to January 29, 2019, Plaintiff Volkava was in charge of Defendants' Instagram account, which she grew from 0 followers to over 35,000.

35.     Plaintiff Volkava worked an average of 20 hours per week on Defendants' social media accounts, including by creating content, shooting and editing videos and photos, posting content, creating captions, seeking collaborations and other social media exposure, such as by getting Rolf's posted by other popular content creators and bloggers, organizing photoshoots, for example with famous brand Badgley Mischka, interacting with followers, answering questions and etc.

36.     Defendants did not pay her *any* wages for the hours she worked on their social media accounts.

Plaskavitskaya's Employment Dates and Hours Worked

37.     Plaintiff Plaskavitskaya worked for Defendants from October 2018 to the beginning of February 2019 as a server.

38.     Plaintiff Plaskavitskaya generally worked 5 to 7 days per week, starting at 10:30 a.m. and finishing at 12:00 a.m., working 13.5-hour days and between 67.75 and 94.5 hours per week.

Zaytseva's Employment Dates and Hours Worked

39.     Plaintiff Zaytseva worked for Defendants from the Fall 2013 to January

2019, working the first year as a server and then as a bartender.

40.    Plaintiff Zaytseva was in charge of opening and closing the restaurant and accordingly, often worked longer than some other employees.

41.    Plaintiff Zaytseva generally worked 5 to 6 days per week during the busy season and 3 to 4 days a week during the rest of the year.

42.    During the busy season, Plaintiff Zaytseva worked 5 to 6 days per week, working from 11:00 a.m. to 2:00 a.m., on weekdays, and from 11:00 a.m. to 3:00 or 3:30 a.m., on weekend days, working at least 15 to 16.5 hours per day and at least 75 to 90 hours per week.

43.    Outside of the busy season, Plaintiff Zaytseva generally worked 3 to 4 days a week, working from 11:00 a.m. to 11:00 p.m. to 12:00 a.m., working at least 12 to 13 hours per day and at least 36 to 52 hours per week.

<u>Hernandez's Employment Dates and Hours Worked</u>

44.    Plaintiff Hernandez worked for Defendants from mid-November 2013 to March 15, 2020 as a bartender and server.

45.    Plaintiff Hernandez generally worked as a server, but during the off season, she would also pick up a few bartender shifts.

46.    From 2016 to 2018, during the busy season, Plaintiff Hernandez generally worked 4 to 7 days per week, working from 11:00 a.m. to 12:00 a.m., working an average of 13 hours per day and between 52 and 91 hours per week.

47.    From 2016 to 2018, during the off season, Plaintiff Hernandez generally worked 2 to 4 days per week, working from 11:30 a.m. to 10:30 p.m. or 11:00 p.m., working between 11 and 11.5 hours per day and 22 to 46 hours per week.

48.    In 2019 and 2020, during the busy season, Plaintiff Hernandez generally worked 3 to 4 days per week, usually working from 11:00 a.m. to 12:00 a.m., working an average of 13 hours per day and between 39 and 52 hours per week.

49.    In 2019 and 2020, during the off season, Plaintiff Hernandez generally worked 2 to 4 days per week, usually working from 11:30 a.m. to 10:30 p.m. or 11:00 p.m., working between 11 and 11.5 hours per day and 22 to 46 hours per week.

<u>Hernadez's Unpaid Administrative Hours</u>

50.    Defendants required Plaintiff Hernandez to make schedules for the waitstaff and interview other staff for hiring purposes, without paying her *any* wages for those hours.

51.    From 2015 to 2020, from September to February each year, Plaintiff Hernandez spent between 4 and 5 hours per week, working from her home, making weekly schedules for Defendants' employees. And she spent 2 to 3 hours per week responding to Defendant Maisano's text messages and communications in connection with the scheduling.

52.    From 2015 to 2020, from February to September, Plaintiff Hernandez spent at least 30 minutes per week working from her home, making weekly schedules for Defendants' employees.

53.    During her employment, Defendant Maisano required Plaintiff Hernandez to interview candidates for wait staff positions for him. For instance, in 2019, she interviewed between 4 to 5 candidates, spending 1 to 2 hours per interview.

54.    Defendants failed to pay Plaintiff Hernandez *any* wages for those extra hours she worked interviewing their waitstaff.

Other Employees

55.    Throughout their employment, Plaintiffs and other similarly situated employees regularly worked more than 10 hours per day and more than 40 hours per week.

56.    From reviewing the schedule, speaking with them and personal observations, Plaintiffs know that other servers worked similar hours as them.

57.    During their employment with Defendants, at any given time, Plaintiffs worked with at least 5 or 6 other servers and 4 or 5 bussers.

58.    Because of a high turnover at Defendants' restaurant, Plaintiffs worked with at least 30 servers during all relevant times.

59.    From personally observing and speaking with them, Plaintiffs know that their coworkers performed the same duties as them and were compensated in the same manner by Defendants. These coworkers include: Vlad [last name unknown], Yana [last name unknown], Gabriel [last name unknown], Steve [last name unknown], Justin [last name unknown], Justin [last name unknown], Aleksey [last name unknown], Susana [last name unknown], Yanina Strylets and Viktoryia Strylets.

Hourly Rate, Spread-of-Hours, Overtime

60.    The following chart shows the minimum wage under the New York Labor Law for the relevant years for employers with more than 11 employees:

|  | Labor Law Minimum Wage | Labor Law Tip Credit | Tipped Minimum Wage |
|---|---|---|---|
| 2017 | $11.00 | $1.50 | $7.50 |
| 2018 | $13.00 | $4.35 | $8.65 |
| 2019 | $15.00 | $5.00 | $10.00 |
| 2020-2023 | $15.00 | $5.00 | $10.00 |

61.    Defendants failed to pay Plaintiffs at the applicable minimum wage during

every year of their employment.

Volkava's Compensation

62.     Defendants paid Plaintiff Volkava $7.50 per hour in 2017.

63.     Defendants paid Plaintiff Volkava $8.65 per hour in 2018.

64.     Defendants paid Plaintiff Volkava $10.00 per hour in 2019.

65.     Defendants failed to pay Plaintiff Volkava *any* wages for the hours she worked doing their social media and marketing.

Plaskavitskaya's Compensation

66.     Defendants paid Plaintiff Plaskavitskaya $8.65 per hour in 2018.

67.     Defendants paid Plaintiff Plaskavitskaya $10.00 per hour in 2019.

Zaytseva's Compensation

68.     Defendants paid Plaintiff Zaytseva $7.50 per hour in 2017.

69.     Defendants paid Plaintiff Zaytseva $8.65 per hour in 2018.

70.     Defendants paid Plaintiff Zaytseva $10.00 per hour in 2019.

Hernandez's Compensation

71.     Defendants paid Plaintiff Hernandez $7.50 per hour in 2017.

72.     Defendants paid Plaintiff Hernandez $8.65 per hour in 2018.

73.     Defendants paid Plaintiff Hernandez $10.00 per hour in 2019.

74.     Defendants paid Plaintiff Hernandez $10.00 per hour in 2020.

75.     Defendants failed to pay Plaintiff Hernandez *any* wages for the hours she worked doing their employees' schedules and interviews.

76.     In paying Plaintiffs the above hourly rates, Defendants were claiming a tip credit against the statutory minimum wage in every relevant year.

77.    While claiming a tip credit against the minimum wage, Defendants failed to inform, whether verbally or in written form, Plaintiffs and the other servers that they were claiming a tip credit.

78.    Defendants failed to inform Plaintiffs and the Class Action Members of the Labor Law's tip credit provisions, failing to give them the required notice; and (ii) Defendants failed to pay them for all hours worked in violation of the Labor Law.

79.    Defendants paid Plaintiffs only for the first 10 hours worked but failed to pay them *any* wages for *any* hours worked over 10 per day.

80.    Defendants did not pay Plaintiffs for all of the overtime hours that they worked. For instance, when Plaintiffs worked 5 days a week and 12 hours per day, totaling 60 hours per week, Defendants paid them for only 50 hours (10 hours per day x 5 days) per week. Defendants failed to pay them *any* wages for the hours they worked from 50 to 60.

81.    Plaintiffs regularly worked more than 10 hours in a day, but Defendants did not pay them spread-of-hours pay: an extra hour at the minimum wage.

82.    Plaintiffs have heard other servers complain that Defendants did not pay them for all hours worked and failed to pay them all of their overtime hours.

83.    Plaintiffs know that Defendants fired or retaliated against the servers that complained about not getting paid properly. Namely, Plaintiffs know that in or about 2018, Defendant Maisano fired a server, named Vincent [last name unknown] after he asked Defendants to pay him and other servers and bartenders their overtime premium pay for hours worked over 40 in a week.

Labor Law Notice and Wage Statement Violations

84.     Defendants did not require Plaintiffs and their coworkers to clock in or clock out.

85.     Defendants have no policy or practice of tracking the hours that Plaintiffs and their coworkers worked.

86.     Plaintiffs' paystubs did not correctly reflect all of the hours that they worked: they reflected a fiction that they worked exactly 10.0 hours per day, not accounting for *any* hours they worked above that.

87.     Plaintiffs know that other servers complained that their paystubs did not accurately reflect all the hours they worked.

88.     Defendants did not provide Plaintiffs or the other servers and bartenders with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

89.     Defendants did not provide Plaintiffs or the other servers and bartenders with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

90.     Defendants' failure to provide Plaintiffs' with N.Y. Lab. Law §§ 195.1 and 195.3 notices and wage statements deprived Plaintiffs of the opportunity to examine the hours they worked and they pay they received during their employment.

91.     If Defendants had complied with the N.Y. Lab. Law §§ 195.1 and 195.3 notices and wage statements, Plaintiffs would have been able to see that they were not paid at their overtime hourly rate for the hours worked over 40 per week and would have been able to avoid underpayment of their wages.

92.     Defendants' failure to provide Plaintiffs' with N.Y. Lab. Law §§ 195.1

and 195.3 notices and wage statements deprived Plaintiffs of the information necessary for them to review their wages and hours worked and was a direct cause for their economic injury and, in fact, resulted in their wages being underpaid.

93.    Defendants did not post at the restaurant an up-to-date poster advising Plaintiffs and other employees of their right to a minimum wage and overtime premium pay.

94.    From speaking with them, Plaintiffs know that other servers and bartenders were, like they, not paid for all of their hours worked, were paid below the statutory minimum wage, were not paid overtime, were not given the required Labor Law notices, and were not paid spread-of-hours pay.

Defendants' Male Supervisory Staff

95.    Defendants' permanent staff consists of men from Bangladesh, in relevant part, a bartender, Aktar [last name unknown], and a head waiter, Babul [last name unknown] ("permanent male staff"). The permanent male staff's duties included making employee schedules, assigning employees tables to service, keeping track and ordering inventory and supervising servers and other employees.

Plaintiff Hernandez's Gender Discrimination, Sexual Harassment, Hostile Work Environment

96.    During Plaintiff Hernandez's employment, Defendants instigated, encouraged and condoned gender discrimination, sexual harassment and hostile work environment towards all Plaintiffs and other female employees at work on a daily basis.

97.    During Plaintiffs' employment with Defendants, their permanent male staff regularly expressed their cultural views against women at work, including that woman are subservient to men, that "women should not work," "do not need to make

money because their place is at home," and that women were less deserving of equal pay and did not have to be paid the same as men, creating a discriminatory and hostile work environment for Plaintiffs and Defendants' female employees.

98.    During her employment, Aktar sexually harassed Plaintiff Hernandez on a daily basis, including with sexual comments and unsolicited physical touching.

99.    During her employment, Aktar regularly asked Plaintiff Hernandez what positions she liked during sex and would ask her to describe her last sex act to him. She refused every time and told him to stop, but he continued to ask her these questions regularly throughout all years of her employment.

100.    During her employment, Aktar repeatedly and persistently asked Plaintiff Hernandez about the age that she lost her virginity. Despite her being very uncomfortable and declining numerous times to answer the invasive and inappropriate questions, he continued her to ask his question regularly, from year to year.

101.    At least every two weeks, Aktar regularly asked Plaintiff Hernandez to give him a massage or attempted to give her a shoulder massage. She asked him to stop but he persisted and tried to laugh it off.

102.    During her employment, Aktar regularly passed by Plaintiff Hernandez behind the bar and made sure to make full body contact with her body from behind, sexually harassing her, crowding her personal space and making her feel very uncomfortable. She told him to stop, but he continued to sexually harass her.  She saw that he did this to other female employees but never touched or crossed personal space with men.

103.    During her employment, Aktar would sometimes approach her and

quickly put his hand in Plaintiff Hernandez's apron's pocket, which was situated below her bellybutton and in front of her groin. This attempt at sexual touching made her very uncomfortable and she asked him to stop repeatedly, but he would laugh it off and tell her that he just wanted to see how much cash tips she had in her front pocket and nothing else. Despite yet another one of his excuses, Plaintiff Hernandez felt violated, but her protests were ignored.

104.    During her employment, Aktar would brag to Plaintiff Hernandez and other female servers about his sexual abilities, telling them that he can have a lot of sex, multiple times per day and that he is very "strong" in bed. Plaintiffs felt very uncomfortable and tried to change the subject every time, but he always persisted with his sexual harassment.

105.    Babul gender discriminated and harassed Plaintiff Hernandez by telling her that because she was a woman, she did not need to work. He also told her that she "has a rich husband and as a woman does not need to get paid."

106.    Babul also expected Plaintiff Hernandez to serve his customers when he had too many tables assigned to him but he kept all the tips from the tables she served.

107.    Defendants treated men better than women at work in more than one way, by providing them with more opportunity to earn more money at work for the same or less amount of work performed and by favoring the men with tips and giving them gifts.

108.    Defendant Maisano regularly gave cash, between $20 and $40, to Aktar, Babul and other male staff for performing small tasks at work, such as going to the basement to bring up a box, taking only a few minutes of time. However, when Plaintiff Hernandez and other female staff performed hours of extra work for him, including social

media, scheduling, interviewing and other important task which took hours at a time, he refused to pay them *any* wages.

109.    Defendant Maisano also expressed his preference for the male staff by buying them gifts. For instance, he bought Aktar and Babul sneakers and a metal safe for their home. When other male staff asked for the same gifts, he would gift the men those gifts too.

110.    Defendant Maisano allowed the male staff to have more tables and to get better customers, such as generous regulars or corporate customers, and larger parties than the female staff. This held true, even if it was not the male staff's turn to get the client but if a big party or a generous client walked in, he would allow the order of table assignment to skip the female staff and go to the male staff.  This resulted in female staff earning significantly less tips.

111.    During her employment, Defendant Maisano allowed the male staff to take larger parties, corporate customers and generous regular customers out of turn, even if it was Plaintiff Hernandez's turn to get the next client, resulting in her losing tips she could have earned.

112.    Defendants made Plaintiff Hernandez and other female employees service the tables assigned to Babul, Aktar and the other male staff but did not allow them to keep the tips when the customers left. So despite performing all the work in serving the customers seated at those tables, the tips would go to the male staff and not Plaintiff Hernandez and the female staff.

113.    Plaintiff Hernandez estimates that Babul made at least 40% to 50% more in tips per night during busy season because of these discriminatory practices favoring

male staff. For instance, Plaintiff Hernandez estimates that, during a busy shift during the busy season, she usually earned around $600, and Babul would make $1,000 to $1,100 in tips per night.

114.    As a result of Defendants' permanent male staff's hostile views against women, they discriminated against Plaintiffs and other female servers in several ways, including assigning them fewer and less quality tables, while assigning the male servers more tables with more customers. This practice resulted in female servers suffering from harassment, discrimination and emotional distress and earning less wages, tips and gratuities than their male co-workers.

115.    Plaintiff Hernandez's co-workers witnessed most, if not all, of the harassment and discrimination described in this Complaint.

116.    As a result of Defendants' sexual harassment and discrimination of her, Plaintiff Hernandez has suffered and continues to suffer, *inter alia*, lost wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

<u>CLASS ACTION ALLEGATIONS</u>

117.    Plaintiffs assert these allegations and claims on their own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who were servers, bartenders and other comparable tipped positions at any time since March 8, 2017 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees under the New York Labor Law (the "Class Members").

118.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and

the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 50 Class Members exist.

119.    Plaintiffs' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

120.    Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

121.    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

122.    Plaintiffs have the same interest in this matter as all other Class Members and their claims are typical of Class Members'.

123.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a.    Whether Defendants employed Plaintiffs and the Class Members within the meaning of the Labor Law;

b.    What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

c.    Whether Defendants failed or refused to pay the Class Members overtime premium pay for all hours worked in excess of 40 hours per workweek;

d.      Whether Defendants failed or refused to pay the Class Members spread-of-hours pay for days when they worked in excess of 10 hours;

e.      Whether Defendants gave Plaintiffs and the Class Members proper notice of the "tip credit" as 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 requires;

f.      Whether Defendants failed to provide Plaintiffs and the Class Members Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1;

g.      Whether Defendants failed to provide Plaintiffs and the Class Members wages statements under Labor Law § 195.3;

h.      Whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiffs and the Class Members are employed;

i.      Whether Defendants are liable for all damages claimed hereunder, including interest, costs and disbursements and attorneys' fees; and

j.      Whether Defendants should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

124.    Under 29 U.S.C. § 206, Plaintiffs seek to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were servers, bartenders and other comparable tipped positions with different titles at any time since March 8, 2020 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees under the FLSA (the "Collective Action Members").

125.    Plaintiffs and the Collective Action Members are similarly situated on

several legal and factual issues, including:

    a.    Defendants employed the Collective Action Members within the meaning of the FLSA;

    b.    Collective Action Members performed similar duties;

    c.    Defendants willfully or recklessly violated the FLSA;

    d.    Whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek, violating the FLSA and the regulations promulgated thereunder;

    e.    Defendants should be enjoined from such violations of the FLSA in the future; and

    f.    The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

<u>FIRST CAUSE OF ACTION</u>
**FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA**
(On Behalf of Plaintiffs and the Class Members)

126.    Plaintiffs allege every preceding allegation as if set forth fully herein.

127.    Defendants were required to pay Plaintiffs and the Collective Members no less than one and 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

128.    At all relevant times, Defendants had a policy and practice of not paying overtime at the applicable overtime rate to their employees for *all* of their hours worked in excess of 40 hours per workweek.

129.    Defendants were aware or should have been aware that the practices

described in this Complaint were unlawful, making their violations willful or reckless.

130.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs and the Collective Members' compensation.

131.    Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

132.    In failing to compensate Plaintiffs and the Collective Members for all compensable hours worked, Defendants violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

SECOND CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

133.    Plaintiffs allege every preceding allegation as if set forth fully herein.

134.    Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiffs and the Class Members.

135.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the Class Members.

136.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs and the Class Members the statutory minimum wage.

137.    Defendants paid Plaintiffs and the Class Members below the statutory minimum wage.

138.    Defendants were not eligible to take a tipped credit and pay Plaintiffs and the Class Action Members below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because: (i) Defendants failed to inform Plaintiffs and the Class Action Members of the Labor Law's tip credit provisions, failing to give them the required notice; and (ii) Defendants failed to pay them for all hours worked in violation of the Labor Law.

139.    Defendants are accordingly liable to Plaintiffs and the Class Action Members for the difference between the hourly rate at which they paid them and the statutory minimum wage.

140.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

141.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiffs and the Class Members the minimum wage.

142.    Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

143.    Plaintiffs allege every preceding allegation as if set forth fully herein.

144.    Defendants are employers under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed

Plaintiffs and the Class Members.

145.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40.

146.    Defendants failed to pay Plaintiffs and the Class Members the overtime wages for all hours worked to which they were entitled, violating N.Y. Lab. Law § 650 and Part 142, § 142-2.2 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

147.    Under the Labor Law, when paying tipped employees for hours they worked over 40 in a week, an employer is required to multiply the regular rate of pay by 1.5 and then subtract the tip credit.

148.    Because Defendants are not permitted to claim a tip credit, they were required to pay Plaintiffs and the Class Members at an overtime at a rate of the statutory minimum wage x 1.5.

149.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiffs and the Class Members the correct amount of overtime wages.

150.    Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest. N.Y. Lab. Law § 663.

## FOURTH CAUSE OF ACTION
### FAILURE TO PAY SPREAD-OF-HOURS PAY
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

151.    Plaintiffs allege every preceding allegation as if set forth fully herein.

152.    Defendants willfully failed to pay Plaintiffs and the Class Members one additional hour's pay at the basic minimum wage rate before allowances for each day that their spread of hours exceeded ten hours, violating Part 146 § 146-1.6 of Title 12 of the Official Compilation of Codes, Rules and Regulations.

153.    By their failure to pay Plaintiffs and the Class Members spread-of-hours pay, Defendants have willfully violated the N.Y. Lab. Law Article 19, §§ 650, *et seq*. and the supporting New York State Department of Labor Regulations.

154.    Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### FAILURE TO PROVIDE 195.1 NOTICE
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

155.    Plaintiffs allege every preceding allegation as if set forth fully herein.

156.    Defendants willfully failed to supply Plaintiffs and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1(a) within 10 business days of their first employment date.

157.    Due to Defendants' violations of N.Y. Lab. Law § 195.1, Plaintiffs and the Class Members are entitled to recover from Defendants $50.00 for each workday that the

violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

<u>SIXTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

158.    Plaintiffs allege every preceding allegation as if set forth fully herein.

159.    Defendants have willfully failed to supply Plaintiffs and the Class Members with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

160.    Due to Defendants' violations of Labor Law § 195.3, Plaintiffs and the Class Members are entitled to recover from Defendants $100.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

<u>SEVENTH CAUSE OF ACTION</u>
GENDER DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Plaintiff Hernandez)

161.    Plaintiff Hernandez realleges every preceding allegation as if set forth fully herein.

162.    At all relevant times, Plaintiff Hernandez was an "employee" and "person" and Defendants were "employer(s)" under the NYCHRL.

163.    Plaintiff Hernandez was subject to gender discrimination and treated less well than her male colleagues because of her gender, violating N.Y.C. Admin. Code § 8-107(1)(a).

164.    Defendants' permanent male staff, including Aktar and Babul had the

authority to affect Plaintiff Hernandez's employment terms and conditions, including by firing and hiring her.

165.    Defendants are strictly liable for the actionable hostile and discriminatory environment created by their management, supervisors and employees who had immediate or successively higher authority over Plaintiffs, including Aktar and Babul.

166.    Defendants knew or should have known of the constant and ongoing discrimination, including hostile work environment and the sexual harassment against Plaintiff Hernandez, but failed to take any remedial steps for so long as to amount to a continuous discriminatory policy and practice.

167.    As a result of Defendants' discrimination of her, Plaintiff Hernandez has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

168.    Defendants discriminated against Plaintiff Hernandez with malice and reckless indifference to her rights under the NYCHRL.

169.    As a result of Defendants' unlawful conduct, Plaintiff Hernandez can recover punitive damages. N.Y.C. Admin. Code § 8-502.

EIGHTH CAUSE OF ACTION
GENDER DISCRIMINATION
UNDER NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Plaintiff Hernandez)

170.    Plaintiff Hernandez realleges every preceding allegation as if set forth fully herein.

171.    At all relevant times, Plaintiff Hernandez was an "employee" and "person" and Defendants were "employer(s)" under the NYSHRL.

172.    The NYSHRL prohibits employment discrimination based on gender.

N.Y. Exec. Law § 296(1)(a).

173.    Plaintiff Hernandez was subjected to unwelcomed sexual conduct, including sexual touching, in the workplace that constitutes sex-based discrimination.

174.    Defendants' workplace was permeated with discrimination that was sufficiently severe and pervasive to alter the conditions of Plaintiff Hernandez's work environment and create an abusive working environment.

175.    Defendants are vicariously liable for the actionable discrimination committed by their management, supervisors and employees who had immediate or successively higher authority over Plaintiff Hernandez, including Aktar and Babul.

176.    As a result of Defendants' harassment of her, Plaintiff Hernandez has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

NINTH CAUSE OF ACTION
HOSTILE WORK ENVIORNMENT
UNDER NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Plaintiff Hernandez)

177.    Plaintiff Hernandez realleges every preceding allegation as if set forth fully herein.

178.    Plaintiff Hernandez was treated less well than her male because of her gender, violating N.Y. Exec. Law § 296(1)(a).

179.    Defendants' discriminatory acts and harassment that Plaintiff Hernandez endured constitute a hostile work environment under NYSHRL.

180.    The discriminatory acts, harassment and hostile work environment that Plaintiff Hernandez endured were a continuous series of related acts that were done by the same individuals and Defendants permitted to continue unremedied.

181.    Defendants violated the NYSHRL when they subjected Plaintiff Hernandez to hostile work environment by harassing her and discriminated against her in terms, conditions and privileges of employment because of her gender.

182.    As a result of Defendants' subjecting her to the hostile work environment, Plaintiff Hernandez has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

TENTH CAUSE OF ACTION
HOSTILE WORK ENVIORNMENT
UNDER NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Plaintiff Hernandez)

183.    Plaintiff Hernandez realleges every preceding allegation as if set forth fully herein.

184.    Plaintiff Hernandez was treated less well than other employees because of her gender, violating N.Y.C. Admin. Code § 8-107(1)(a).

185.    The discriminatory acts and harassment that Plaintiff Hernandez endured constitute a hostile work environment under NYCHRL.

186.    As a result of Defendants subjecting her to the hostile work environment, Plaintiff Hernandez has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

187.    Defendants harassed and subjected Plaintiff Hernandez to hostile work environment with malice and/or reckless indifference to his rights under the NYCHRL.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class Members;

b.    Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members and tolling of the statute of limitations;

c.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

d.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.    An award for unpaid overtime premium pay under the Labor Law and the FLSA;

f.    An award for unpaid minimum wage under the Labor Law;

g.    An award for unpaid spread-of-hours pay under the Labor Law;

h.      An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;

i.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

j.      An award of liquidated damages as a result of Defendants' Labor Law violations;

k.      An award of liquidated damages as a result of Defendants' willful FLSA violations;

l.      Equitably tolling the statute of limitations under the FLSA;

m.      An award to Plaintiff Hernandez for back pay, front pay and all benefits along with pre and post judgment interest.

n.      An award to Plaintiff Hernandez for punitive, liquidated and compensatory damages including damages for emotional distress, pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination is repulsive to legislative enactments.

o.      An award of pre-judgment and post-judgment interest;

p.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions

of fact the Complaint raises.

Dated:  New York, New York
        June 9, 2023

                        LIPSKY LOWE LLP


                        <u>s/ Milana Dostanitch</u>
                        Milana Dostanitch
                        420 Lexington Avenue, Suite 1830
                        New York, New York 10017-6705
                        212.392.4772
                        milana@lipskylowe.com